OPINION
{¶ 1} This is an appeal from a decision reached in the Juvenile Division of the Court of Common Pleas of Tuscarawas County wherein Casey Richards, a minor, was found delinquent by reason of felonious assault, a felony of the second degree, and was committed to the Ohio Department of Youth Services.
 STATEMENT OF FACTS AND THE CASE {¶ 2} The incident forming the basis of the decision was an altercation between Appellant and one, Brandon Bates, also a minor.
 {¶ 3} Allegations of a racial slur were asserted by Appellant as a causative factor.
 {¶ 4} Brandon Bates was struck by Appellant and was also kicked while down, although the State's witnesses attributed the kicks to someone other than Appellant.
 {¶ 5} Brian Bates went to the emergency room for treatment.
 {¶ 6} He was not admitted to the hospital.
 {¶ 7} He testified as to bleeding, pain, temporary unconsciousness, concussion and recurring episodes of forgetfulness. No medical expert testified, but no objections were made to medical conclusions by Appellant.
 {¶ 8} The medical witness for the State, although subpoenaed, failed to appear to testify. A continuance for the appearance of such witness was denied.
 {¶ 9} The Assignments of Error are:
 ASSIGNMENTS OF ERROR {¶ 10} "I. THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE THE DEFENDANT CAUSED SEROUS [SIC] PHYSICAL HARM TO THE VICTIM.
 {¶ 11} "II. THE TRIAL COURT'S FINDING OF NO CREDIBLE EVIDENCE TO SUPPORT SERIOUS PROVOCATION AS A MITIGATING FACTOR FOR THE INFERIOR OFFENSE OF AGGRAVATED ASSAULT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF EVIDENCE PRESENTED AT TRIAL.
 {¶ 12} "III. THE TRIAL COURT MANIFESTED A PREDISPOSITION AND JUDICIAL BIAS RESULTING IN PREJUDICE TO APPELLANT WHEN THE TRIAL COURT INFORMED THE STATE THAT NO MEDICAL EXPERT WITNESS WOULD BE NEEDED BEFORE HEARING ALL THE OTHER TESTIMONY, RESULTING IN A VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT.
 {¶ 13} "IV. THE TRIAL COURT'S FINDING OF `SERIOUS PHYSICAL HARM' RATHER THAN `PHYSICAL HARM' TO SUPPORT THE LESSER INCLUDED OFFENSE OF ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."
 I., IV. {¶ 14} We shall address the First and Fourth Assignments of Error together.
 {¶ 15} In reviewing the records under the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Martin (1983), 20 Ohio App.3d 172. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The discretionary power to grant a new trial "should be exercised only in the exceptional case in which the evidence weights heavily against the conviction." Martin at 175. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus.
 {¶ 16} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. The weight to be given evidence and the determination of credibility of witnesses are issues for the trier of the facts, not for the reviewing court. State v.Jamison (1990), 49 Ohio St.3d 182, cert. denied, 498 U.S. 881.
 {¶ 17} Revised Code § 2903.11(A)(1) provides:
 {¶ 18} "(A) No person shall knowingly do either of the following:
 {¶ 19} "(1) Cause serious physical harm to another or to another's unborn."
 {¶ 20} Revised Code § 2901.01(5)(c) provides:
 {¶ 21} "(5) `Serious physical harm to persons' means any of the following:
 {¶ 22} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity."
 {¶ 23} The testimony of Brandon Bates in support of the court's decision was:
 {¶ 24} "Like I just saw him charging at me and he beat my face in a few times and then I blacked out after that. (Tr. at 11).
 {¶ 25} "I don't remember anything. Like I remember trying to push him off of me, I remember that but I blacked out and I don't remember anything after that. I was told by someone that I tore his shirt." (Tr. at 11).
 {¶ 26} "Okay. Brandon, you said you went to the Dover Police Station afterwards?
 {¶ 27} "Well yeah, because that's where I woke up my first time." (Tr. at 12).
 {¶ 28} "You then went to the Union Hospital Emergency Room?
 {¶ 29} "Yeah, I guess an ambulance picked me up from there, I don't remember but —." (Tr. at 13)
 {¶ 30} "Where were you hurt at?
 {¶ 31} "Like I hurt extremely in the head. I couldn't even open my mouth because it was, it would put pressure towards the top of my head and it would hurt so bad. My ribs were hurting, I just, I don't know, it was hard to close my eyes and open them. It was like my whole entire face hurt all over and I just had some pretty big gashes all over my head." (Tr. at 13).
 {¶ 32} "How long were you at the hospital?
 {¶ 33} "I don't remember. I mean, I woke up in the hospital about twenty minutes before I left but I don't know how long I was at the hospital.
 {¶ 34} "How long did you experience pain after you left the hospital?
 {¶ 35} "Probably about two, three weeks. I had a concussion for about two weeks so I kept like blacking out every now and then and not knowing where I was and stuff but the pain was there for about three to four weeks but it took awhile for everything to heal." (Tr. at 14).
 {¶ 36} "Were there any other injuries on you? We can see you're pulling your hair back showing us something in that photograph your other injuries?
 {¶ 37} "I had, I had a bruise on my ribs for a few days and I had some hair torn out on this side of my head and it was, well, this side actually, and it, because this side is where I had the bump and like it was just little scratches all over the place life if I got my head rubbed into the asphalt or something. It was just little scabs all over the place." (Tr. at 17).
 {¶ 38} "I actually ended up blacking out during school. I don't, like I forgot where like my locker was, I guess I wasn't talking to any of my friends and if I was, I don't remember." (Tr. at 47).
 {¶ 39} The testimony of Stephanie Haver:
 {¶ 40} "Did he seem disoriented?
 {¶ 41} "He like couldn't see or anything, he said like it was hard for him to see or something and then he said his head hurt really bad.
 {¶ 42} "Did you see any visible wounds on him?
 {¶ 43} "His head was like bleeding." (Tr. at 52).
 {¶ 44} The testimony of Sebatian McComb:
 {¶ 45} "Did he seem disoriented to you in any way?
 {¶ 46} "He wasn't talking right, he was kind of mumbling a little bit. He didn't know what was going on really." (Tr. at 59-60).
 {¶ 47} The testimony of Justin Roth:
 {¶ 48} "Did he seem disoriented in any way?
 {¶ 49} "He wasn't talking in full words." (Tr. at 71).
 {¶ 50} The testimony of Jason Edwards:
 {¶ 51} "I asked him what happened and he was just kind of like slurring his speech and he was wobbly and I told him to have a seat. I come around and I called the paramedics to come over and assist Brandon Bates." (Tr. at 76).
 {¶ 52} Based on the foregoing, find that sufficient evidence was presented to warrant the court's conclusions as to a violation of R.C. § 2903.11(A)(1) as described in R.C. §2901.01(5)(c) and that serious physical harm, as defined, was established. The First and Fourth Assignments of Error are rejected.
 II. {¶ 53} The Second Assignment concerns provocation by means of racial slurs.
 {¶ 54} Brandon Bates denied use of such and this was supported by Stephanie Haver. (Tr. at 55).
 {¶ 55} As this testimony provided a basis for the lack of a racial slur from Brandon Bates as provocation, the Second Assignment is denied.
 III. {¶ 56} The Third Assignment concerns allegations of statements by the judge as to the lack of a need for a medical expert.
 {¶ 57} While referring to an affidavit of bias, the Ohio Supreme Court defined such in State ex rel. Pratt v. Weygandt,Chief Justice (1956), 164 Ohio St. 463:
 {¶ 58} "With regard to relator's second contention, the term `biased or prejudiced', when used in reference to a judge before whom a cause is pending, implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with formation of a fixed anticipatory judgment on part of judge, as contra-distinguished from an open state of mind which will be governed by law and facts."
 {¶ 59} Nothing indicating bias appears in the record. Therefore, we must presume regularity in the proceedings as we have nothing to review. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197.
 {¶ 60} The Third Assignment of Error is not well taken.
 {¶ 61} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
Boggins, J. Gwin, P.J. and Hoffman, J. concurs.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.